1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

KIMBERLY ANN SMITH,

Plaintiff,

v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

Defendant.

NO.  C12-1812-JCC-JPD

REPORT AND
RECOMMENDATION

Plaintiff Kimberly Ann Smith appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner"), which denied her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-83f, after a hearing before an administrative law judge ("ALJ").  For the reasons set forth below, the Court recommends that the Commissioner's decision be reversed and remanded for further administrative proceedings.

I.      FACTS AND PROCEDURAL HISTORY

At the time of the administrative hearing, Plaintiff was a 47-year-old woman with a high school education.  Administrative Record ("AR") at 54, 182.  Her past work experience

REPORT AND RECOMMENDATION - 1

includes employment as a home health provider, small product assembler, and semiconductor

bonder.  AR at 91, 178.  Plaintiff was last gainfully employed in 2008.  AR at 178.

On April 20, 2009, Plaintiff filed a claim for SSI payments.[1]  AR at 159-62.  Plaintiff

asserts that she is disabled due to depression, left hip impairment, diabetes, anxiety, blocked

arteries, and a bad heart valve.  AR at 177, 211, 221.

The Commissioner denied Plaintiff's claim initially and on reconsideration.  AR at 100-

03, 105-06.  Plaintiff requested a hearing (AR at 107-08), which took place on June 13, 2011.

AR at 46-97.  On July 14, 2011, the ALJ issued a decision finding Plaintiff not disabled and

denied benefits based on his finding that Plaintiff could perform her past work.  AR at 25-40.

Plaintiff's administrative appeal of the ALJ's decision was denied by the Appeals Council, AR

at 1-6, making the ALJ's ruling the "final decision" of the Commissioner as that term is

defined by 42 U.S.C. § 405(g).  On October 16, 2012, Plaintiff timely filed the present action

challenging the Commissioner's decision.  Dkt. 1, 3.

## II.      JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§

405(g) and 1383(c)(3).

## III.      STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of

social security benefits when the ALJ's findings are based on legal error or not supported by

substantial evidence in the record as a whole.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th

---

[1] Though Plaintiff requested that a prior application for Disability Insurance Benefits ("DIB") be reopened, the ALJ declined to do so.  AR at 25, 53.  Though Plaintiff requests that on remand, her record should be supplemented with documentation related to her DIB application, she does not specifically argue that the ALJ erred in declining to reopen the application.  Dkt. 17 at 1-2.  In the absence of an assignment of error and a showing that the ALJ erred in declining to reopen the prior DIB application, the Court will not instruct the ALJ to reopen that application on remand.

Cir. 2005).  "Substantial evidence" is more than a scintilla, less than a preponderance, and is

such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750

(9th Cir. 1989).  The ALJ is responsible for determining credibility, resolving conflicts in

medical testimony, and resolving any other ambiguities that might exist.  *Andrews v. Shalala*,

53 F.3d 1035, 1039 (9th Cir. 1995).  While the Court is required to examine the record as a

whole, it may neither reweigh the evidence nor substitute its judgment for that of the

Commissioner.  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  When the evidence is

susceptible to more than one rational interpretation, it is the Commissioner's conclusion that

must be upheld.  *Id.*

The Court may direct an award of benefits where "the record has been fully developed

and further administrative proceedings would serve no useful purpose."  *McCartey v.*

*Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292

(9th Cir. 1996)).  The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the
> claimant's evidence; (2) there are no outstanding issues that must be resolved
> before a determination of disability can be made; and (3) it is clear from the
> record that the ALJ would be required to find the claimant disabled if he
> considered the claimant's evidence.

*Id.* at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that

erroneously rejected evidence may be credited when all three elements are met).

## IV.   EVALUATING DISABILITY

As the claimant, Ms. Smith bears the burden of proving that she is disabled within the

meaning of the Social Security Act (the "Act").  *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th

Cir. 1999) (internal citations omitted).  The Act defines disability as the "inability to engage in

any substantial gainful activity" due to a physical or mental impairment which has lasted, or is

REPORT AND RECOMMENDATION - 3

expected to last, for a continuous period of not less than twelve months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A claimant is disabled under the Act only if her impairments are of such severity that she is unable to do her previous work, and cannot, considering her age, education, and work experience, engage in any other substantial gainful activity existing in the national economy.  42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The claimant bears the burden of proof during steps one through four.  At step five, the burden shifts to the Commissioner.  *Id.*  If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps.  Step one asks whether the claimant is presently engaged in "substantial gainful activity."  20 C.F.R. §§ 404.1520(b), 416.920(b).[2]  If she is, disability benefits are denied.  If she is not, the Commissioner proceeds to step two.  At step two, the claimant must establish that she has one or more medically severe impairments, or combination of impairments, that limit her physical or mental ability to do basic work activities.  If the claimant does not have such impairments, she is not disabled.  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations.  20 C.F.R. §§ 404.1520(d), 416.920(d).  A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled.  *Id.*

---

[2] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit.  20 C.F.R. § 404.1572.

REPORT AND RECOMMENDATION - 4

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether she can still perform that work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is able to perform her past relevant work, she is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100. If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

## V.   DECISION BELOW

On July 14, 2011, the ALJ issued a decision finding the following:

1.   The claimant has not engaged in substantial gainful activity since April 20, 2009, the application date.

2.   The claimant's obesity, degenerative disc disease of the thoracic spine, diabetes mellitus under poor control, hypertension, depression, and anxiety are severe impairments.

3.   The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

4.   The claimant has the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. § 416.967(a). She can lift and carry ten pounds occasionally and less than ten pounds frequently; stand and/or walk for at least two hours in an eight-hour workday; sit for six hours in an eight hour workday; and push and/or pull, including operation of foot and hand controls, without limitation other than as indicated for lifting and carrying. The claimant can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs, with

REPORT AND RECOMMENDATION - 5

no climbing of ladders, ropes and scaffolds.  She has no manipulative, visual, communicative, or environmental limitations.  In addition, the claimant has the mental capability to adequately perform the mental activities generally required by competitive, remunerative, work as follows: she can understand, remember, and carry out simple 1 to 2 step instructions required of jobs classified at a level of SVP 1 and 2 or unskilled work.  She would have average or moderate ability to perform sustained work activities (i.e., can maintain attention and concentration, persistence, and pace) in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule) within customary tolerances of employers rules regarding sick leave and absence.  The claimant can make judgments on simple work related decisions, respond appropriately to supervision and coworkers, and deal with changes all within a stable work environment.

5.     The claimant is capable of performing past relevant work as a semi-conductor bonder.

6.     The claimant has not been under a disability, as defined in the Social Security Act, since April 20, 2009, the date the application was filed.

AR at 27-39.

## VI.     ISSUES ON APPEAL

The principal issues on appeal are:

1.     Whether the ALJ erred in interpreting the opinions of Plaintiff's treating physician Rod Thompson, M.D., and examining physician Florencio Pangilinan, M.D.?

2.     Whether the ALJ erred in assessing Plaintiff's credibility?

Dkt. 17.

## VII.     DISCUSSION

A.     The ALJ Erred in Assessing the Opinions of Drs. Thompson and Pangilinan.

Plaintiff assigns error to the ALJ's reasoning with regard to the opinions of Drs. Thompson and Pangilinan.  The Court will first address the disputes regarding Dr. Thompson's opinions, and then turn to consider the opinion of Dr. Pangilinan.

REPORT AND RECOMMENDATION - 6

1          1.    *Dr. Thompson's 2008 Opinion.*

2        Dr. Thompson completed a form evaluation regarding Plaintiff's ability to work in

3 December 2008.  AR at 558-59.  In response to a question asking whether Plaintiff had any

4 conditions that require special work accommodations, Dr. Thompson indicated that she has

5 limited ambulation and left hip pain, as documented in an MRI showing bursitis.  AR at 558.

6 The following question asked whether those conditions limit Plaintiff's ability to work, and Dr.

7 Thompson answered "yes" and indicated that the specific limitations caused were "limit

8 walking," and that she should be limited to working 1-10 hours per week.  *Id.*  The next

9 question asked about whether the condition would affect Plaintiff's ability to prepare for work

10 and look for work, and Dr. Thompson again answered "yes," and indicated that she could

11 spend a maximum of 30 minutes walking, and should be limited to 1-10 hours per week of

12 preparing or looking for work.  *Id.*  Dr. Thompson also indicated that Plaintiff could carry up to

13 five pounds frequently and ten pounds occasionally.  *Id.*  Dr. Thompson did not indicate how

14 long he expected Plaintiff's condition to likely limit her ability to work, look for work, or train

15 to work: the form asked him to quantify this answer in a number of weeks or months, or to

16 indicate that Plaintiff's condition was permanent.  AR at 559.  Dr. Thompson circled "weeks"

17 and "months," writing a question mark between them.  AR at 559.

18        The ALJ interpreted Dr. Thompson's duration answer to mean that his opinions

19 regarding Plaintiff's walking limitations were "temporary," and found his opinion overall to be

20 "generally consistent" with findings that Plaintiff is "limited to sedentary work with postural

21 limitations but without manipulative, environmental, communicative, or visual limitations."

22 AR at 36.  The ALJ did not explicitly address Dr. Thompson's opinions that Plaintiff should be

23 limited to working 1-10 hours per week, or otherwise explain how this opinion could be

24 consistent with a finding that Plaintiff could perform sedentary work on a full-time basis.

1    The Commissioner defends the ALJ's reasoning on the grounds that it was reasonable

2    for the ALJ to construe Dr. Thompson's opinion as failing to meet the 12-month duration

3    requirement, because Dr. Thompson indicated that he did not know how many weeks or

4    months Plaintiff's limitations would persist.  While the ALJ's interpretation is certainly not the

5    only reasonable interpretation of Dr. Thompson's opinion, Plaintiff has failed to establish that

6    it was unreasonable.  *See Morgan v. Comm'r of the Social Sec. Admin.*, 169 F.3d 595, 599 (9th

7    Cir. 1999) ("Where the evidence is susceptible to more than one rational interpretation, it is the

8    ALJ's conclusion that must be upheld.")

9    The Commissioner presumably believes that because Dr. Thompson's opinion cannot

10   support a disability finding because it addresses only "temporary" limitations, the ALJ's error

11   in finding Dr. Thompson's opinion "consistent" with the State agency opinion that Plaintiff can

12   perform sedentary (full-time) work is harmless.   The Court agrees, because even if the ALJ

13   had explicitly addressed Dr. Thompson's opinion that Plaintiff was limited to working no more

14   than 10 hours per week, that opinion could have been nonetheless discounted as limited in

15   duration, as the ALJ discounted other opinions listed on that form.  Thus, any error with regard

16   to Dr. Thompson's 2008 opinion had no impact on the ultimate disability determination. *See*

17   *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012).

18           2.        *Dr. Thompson's 2011 Interrogatory Answers.*

19   Plaintiff also assigns error to the ALJ's assessment of Dr. Thompson's subsequent

20   interrogatory answers: in March 2011, Dr. Thompson indicated that Plaintiff's severe left

21   ventricular dysfunction (as shown in a February 2010 echocardiogram) was medically

22   equivalent to Listing 4.05 (recurrent arrhythmias).  AR at 698.  The ALJ noted that opinion

23   (AR at 36), but discounted it on the basis of inconsistent subsequent cardiac testing showing

24   "significantly improved left ventricular functioning."  AR at 36 (citing AR at 731 (March 2011

REPORT AND RECOMMENDATION - 8

test results indicating an improvement since April 2010)).  According to the ALJ, Plaintiff's "heart conditions do not impose limitations beyond a sedentary exertional level."  AR at 36.  The ALJ cites no evidence to support this conclusion.  *Id.*

Plaintiff contends that the ALJ erred in disregarding Dr. Thompson's opinion regarding medical equivalence and finding (without evidentiary support) that any limitations caused by her cardiac condition were consistent with sedentary work.  Dkt. 17 at 9-10.  The Commissioner does not respond to this portion of the Plaintiff's argument, instead defending an unchallenged aspect of Dr. Thompson's interrogatory answers.  *See* Dkt. 18 at 10-12; Dkt. 19 at 5-6.[3]  Accordingly, the Court construes the Commissioner's failure to respond as a concession that the ALJ erred in discounting Dr. Thompson's interrogatory answer on the basis of an unsupported interpretation of the medical evidence.  Dr. Thompson's interrogatory answer does not, however, identify any particular limitations caused by Plaintiff's cardiac condition, but merely opines as to medical equivalence.  AR at 698.  Thus, even if Dr. Thompson's interrogatory answer was credited, it is not clear that Plaintiff is necessarily disabled.  *See Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000).  On remand, the ALJ shall reconsider Dr. Thompson's interrogatory answer regarding Plaintiff's cardiac condition at step three and in assessing Plaintiff's RFC and, if necessary, obtain medical expert testimony.

3.    *Dr. Pangilinan's Opinion*

Dr. Pangilinan performed a consultative physical examination of Plaintiff in February 2006, ultimately opining that

---

[3] Though Plaintiff acknowledges that she did not challenge the ALJ's assessment of Dr. Thompson's interrogatory answers regarding mental functioning in her opening brief, she responds to the Commissioner's defense and argues that the ALJ's assessment was erroneous.  Dkt. 19 at 5-6.  Because this issue was not raised in the Opening Brief, but curiously addressed for the first time in the Commissioner's Response, the Court will not address it.  *See Zango, Inc. v. Kaspersky Lab, Inc.*, 568 F.3d 1169, 1177 n.8 (9th Cir. 2009) ("[A]rguments not raised by a party in an opening brief are waived.")

REPORT AND RECOMMENDATION - 9

she can frequently lift and/or carry 10 pounds, stand and/or walk at least 2 hours
in an 8-hour workday. [S]itting, pushing and/or pulling at least 2 hours in an 8-
hour workday, periodically alternating sitting and standing to relieve left hip
lipoma discomfort.  No limitations, with the upper extremities.  She can climb
ramps/stairs, occasionally balance.  Can kneel frequently, occasionally crawl.
No limitations in stooping.  No manipulative limitations, nor visual
(corrected)/communicative limitations.

AR at 278.  The ALJ considered Dr. Pangilinan's opinion, and interpreted it to be consistent

with "sedentary work with periodic alternating of sitting and standing."  AR at 36.  The ALJ

also indicated that he gave more weight to more recent medical opinions, specifically the

opinions of Dr. Thompson.  *Id.*

Plaintiff argues that the ALJ erred in construing Dr. Pangilinan's opinion to mean that

even though she can only sit "at least two hours" per day, she can nonetheless perform

sedentary work with a sit/stand option[4], because sedentary work requires the ability to sit for a

total of sit for six out of eight hours.  Dkt. 17 at 7 (citing Social Security Ruling ("SSR") 96-

9p, 1996 WL 374185, at *3 (Jul. 2, 1996) (defining "sedentary work" to generally require

about six hours of sitting per workday, and no more than about two hours of walking/standing

per day).

Without addressing the specific discrepancies identified by Plaintiff, or disputing the

definition of "sedentary work" as found in SSR 96-9p, the Commissioner contends that the

ALJ's interpretation of Dr. Pangilinan's opinion is "reasonable," arguing that "Plaintiff's own

interpretation of the evidence does not undermine this conclusion or provide a reason to

overturn the ALJ's determination."  Dkt. 18 at 14.  While the Commissioner correctly

summarizes the law generally, she does not apply it to the facts of this case: she does not

analyze why *in this case* it would be reasonable to interpret an opinion stating that Plaintiff can

---

[4] The Court notes that though the ALJ indicated that the limitations identified in Dr.
Pangilinan's opinion were consistent with sedentary work with a sit/stand option, the ALJ did
not include a sit/stand option in his RFC assessment.  *See* AR at 31-32, 36.

REPORT AND RECOMMENDATION - 10

1    sit for at least two hours a day as consistent with a finding that Plaintiff can perform sedentary

2    work, which generally requires at least six hours a day of sitting.  Simply stating that an

3    interpretation is reasonable does not make it so.  Though an argument could be made regarding

4    Dr. Pangilinan's use of the phrase "at least," which may arguably suggest that Plaintiff's

5    maximum capacity is at least somewhat higher than indicated, the Commissioner advanced no

6    such argument.

7          Furthermore, to the extent that the Commissioner argues that the ALJ properly

8    discounted Dr. Pangilinan's opinion due to inconsistencies with other opinions, specifically Dr.

9    Thompson's, the ALJ himself did not explicitly rely on inconsistencies or identify any

10   particular inconsistencies between the opinions.  He stated that he gave "greater weight" to

11   "more recent medical source opinions regarding the claimant's physical abilities and

12   functioning, including the opinion of [Dr. Thompson]," though he did not fully credit Dr.

13   Thompson's 2008 opinion — which indicated that Plaintiff could not work full-time due to a

14   walking limitation that would last an unspecified number of weeks/months — and Dr.

15   Thompson's 2011 interrogatory answers do not address any physical limitations whatsoever.

16   Thus, on remand the ALJ shall reconsider the opinion of Dr. Pangilinan in light of the more

17   recent medical opinions regarding Plaintiff's physical limitations and, if necessary, obtain

18   medical expert testimony.

19   B.    The ALJ Did Not Err in Assessing Plaintiff's Credibility.

20          Plaintiff argues that the ALJ erred in discounting the credibility of her testimony

21   regarding the limiting effects of her hip, back, and neck pain, due to a misapprehension of the

22   medical record.  Dkt. 17 at 13.  She also argues that the ALJ erred in discounting her testimony

23   regarding limitations caused by diabetes due to her failure to comply with treatment, and in

24   discounting her testimony regarding limitations caused by mental impairments due to failure to

pursue treatment.  Dkt. 17 at 13-15.  Plaintiff does not address other factors considered by the ALJ in reaching his adverse credibility determination, including inconsistent daily activities and work history.  *See* AR at 34-35.

1.   *Hip, Back, and Neck Pain*

The ALJ found that the medical record failed to support the existence of medically determinable impairments that caused limitations in standing and walking; any limitations caused by left hip bursitis were only temporary, and the more recent complaints were determined to be caused by poorly controlled diabetes.  AR at 34.  The ALJ found that though Plaintiff's impairments prevented her from being able to stand and walk for "prolonged periods of time," the medical evidence did not corroborate Plaintiff's self-reported inability to sit for a "full workday with normal breaks to stretch her legs."  AR at 35.  The ALJ also noted that the medical record fails to support Plaintiff's allegations of any medically determinable impairment that would cause upper extremity limitations.  *Id.*

Though Plaintiff cites evidence of self-reported symptoms related to standing, walking, and arm pain, she has not shown that the ALJ overlooked evidence of any particular medically determinable impairment.  The ALJ did not err in finding that Plaintiff's testimony alone is not sufficient to show the existence of a medically determinable impairment.  *See Ukolov v. Barnhart*, 420 F.3d 1002, 1004-05 (9th Cir. 2005).  Furthermore, the ALJ explained that he accounted for any limitations caused by pain that were supported by the record (AR 34-35), and Plaintiff has not shown that he erred in doing so.

2.   *Lack of Compliance with Diabetes Treatment*

One of the ALJ's primary reasons for discounting Plaintiff's credibility was her failure to comply with her diabetes treatment: "The record shows inconsistent compliance with diabetic diet, prescribed medications, blood sugar monitoring, and recommendations to

1    exercise." AR at 34. According to the ALJ, "[t]he record also suggests that improved

2    compliance with recommended diet and prescribed medications would help to stabilize blood

3    sugar levels, which, in turn, would likely diminish many symptoms." *Id.*

4          Plaintiff does not dispute that she did not fully comply with her treatment regimen for

5    diabetes, but argues that the ALJ should have considered her reasons for failing to comply and

6    whether compliance would have restored her ability to work. Dkt. 17 at 15. Though Plaintiff

7    points to some evidence that two of her diabetes medications were not covered by her

8    insurance (see AR at 474, 524), the record is replete with other references to Plaintiff's failure

9    to monitor blood sugars as suggested (AR at 534, 661, 672, 676, 705, 748), failure to maintain

10   her recommended diet and exercise (AR at 528, 530-31, 533, 687, 748), failure to take

11   medications as prescribed (AR at 525, 532, 673), and failure to follow up as recommended

12   (AR at 531, 670). Plaintiff has not offered an explanation to the Court for these failures to

13   comply with specific treatment, and the medical record contains no such explanation. Thus,

14   the ALJ did not err in finding that Plaintiff's failure to comply with her diabetes treatment

15   regimen undermined her credibility. *See Molina*, 674 F.3d at 1113-14.

16          3.      *Lack of Mental Health Treatment*

17          The ALJ noted that Plaintiff's physical symptoms are to some degree impacted by her

18   lack of treatment for mental symptoms: he noted that she has not "pursued mental health

19   counseling for help or support in dealing with anxiety and situational stresses, which the

20   overall record suggests may affect blood sugar levels to some extent." AR at 34. The ALJ

21   went on to explain "despite times of heightened stress and symptoms, the claimant has been

22   able to continue to care for her son and her home, and she has not pursued mental health

23   counseling for help in dealing with stress, anxiety, or depression." AR at 35. The ALJ further

24

1    noted that Plaintiff's mental symptoms may be limiting, but they do not "preclude work on a

2    regular and ongoing basis." *Id.*

3        Plaintiff has failed to establish an error in the ALJ's reasoning regarding mental

4    limitations.  The ALJ provided a number of reasons to discount Plaintiff's testimony regarding

5    disabling mental limitations, including general improvement with medication (and a failure to

6    pursue additional treatment in the form of counseling during times of heightened stress) and

7    inconsistent daily activities.  AR at 35.  Plaintiff has failed to show that these reasons are not

8    clear and convincing, instead focusing on what she perceives to be an underlying error in the

9    legal standard employed by the ALJ in evaluating her symptoms in the first place.  Dkt. 19 at

10   8-10.  But Plaintiff acknowledges that the ALJ engaged in the two-step process for evaluating

11   credibility: at the first step, he determined that Plaintiff's impairments could reasonably be

12   expected to produce the symptoms alleged.  Dkt. 19 at 9 (citing AR at 33).  But Plaintiff fails

13   to recognize that at the second step, the ALJ may reject a claimant's testimony about the

14   severity of her symptoms upon providing clear and convincing reasons to do so.  *See*

15   *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007).  Plaintiff has not shown that the

16   reasons provided by the ALJ to discount Plaintiff's testimony regarding mental symptoms are

17   not clear and convincing, and thus has not identified an error in the ALJ's decision in this

18   regard.

19        4.    *Medication Side Effects*

20        Though Plaintiff argues that the ALJ failed to account for medication side effects when

21   assessing her RFC, she fails to acknowledge that the ALJ specifically noted her medication

22   side effects (AR at 33) and found that the side effects she complained of do not preclude "less

23   strenuous" work, assuming she is compliant with medications and treatment.  AR at 34.

24   Particularly in light of the ALJ's proper adverse credibility finding, the ALJ's consideration of

REPORT AND RECOMMENDATION - 14

medication side effects is sufficient.  *See Roquemore v. Comm'r of Social Sec. Admin.*, 374 Fed. Appx. 693, 695 (9th Cir. 2010) (rejecting a claimant's argument that an ALJ was required to discuss medication side effects, even though the ALJ properly discounted the claimant's credibility, where the claimant "fails to identify any objective evidence of side effects.  He points only to his own subjective claims of drowsiness and decreased concentration.  Nothing in the record suggests that Roquemore's ability to work was affected by his medications.  Therefore, the ALJ was not required to include a discussion of side effects.").

## VIII.   CONCLUSION

For the foregoing reasons, the Court recommends that this case be REVERSED and REMANDED to the Commissioner for further proceedings not inconsistent with the Court's instructions.  A proposed order accompanies this Report and Recommendation.

DATED this 21st day of August, 2013.

*James P. Donohue*

JAMES P. DONOHUE
United States Magistrate Judge

REPORT AND RECOMMENDATION - 15